UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ELIGAH HAYES, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | No. 2:18-cv-00199 |
| | : | |
| LAUREL HARRY; | : | |
| THE DISTRICT ATTORNEY OF THE | : | |
| COUNTY OF PHILADELPHIA; and | : | |
| THE ATTORNEY GENERAL OF THE | : | |
| STATE OF PENNSYLVANIA, | : | |
| Respondents. | : | |

**O P I N I O N**

**Petition for Writ of Habeas Corpus, ECF No. 1**----------------------------- **Dismissed and Denied**
**Report and Recommendation, ECF No. 11**-------------------------------- **Approved and Adopted**
**Petitioner's Motion to Object to the Report and Recommendation, ECF No. 18-- Overruled**
**Petitioner's Motions, ECF Nos. 19, 20**-------------------------------------------------------**Denied**

**Joseph F. Leeson, Jr.**                                                                                    **August 13, 2019**
**United States District Judge**

I.     **INTRODUCTION**

      Petitioner Eligah Hayes filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, challenging his conviction in the Court of Common Pleas of Philadelphia County for

attempted murder, aggravated assault, robbery, and criminal conspiracy. United States

Magistrate Judge Linda K. Caracappa prepared a Report and Recommendation (R&R) which

recommends that Petitioner's petition be dismissed with prejudice as meritless. Petitioner has

filed objections. After de novo review, this Court adopts the R&R in full as explained herein,

overrules Petitioner's objections, and dismisses the habeas petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 2008, Petitioner and two coconspirators approached Vernon Kulb III with guns drawn. When they reached Kulb, co-defendant Craig Woodard struck Kulb in the head with his gun. Woodard proceeded to go through Kulb's pockets while Petitioner held a gun in Kulb's face. Woodard then shot Kulb in the back and the three men fled. Following a joint jury trial with Woodward, on June 11, 2010, Petitioner was convicted of attempted murder, aggravated assault, robbery, and criminal conspiracy. *See* State Court Docket; Court of Common Pleas of Philadelphia County 10, CP-51-CR-0006331-2009. In July 2010, Petitioner was sentenced to a term of twenty to forty years of imprisonment. *Id.* at 11. Petitioner filed post-verdict motions and appealed his case through the Pennsylvania state court system. *Id.* at 11-13. This judgment became final on April 24, 2012.

In July 2012, Petitioner filed a *pro se* petition for post-conviction relief, pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §§ 9541-9551. *See* State Court Docket; Court of Common Pleas of Philadelphia County 13, CP-51-CR-0006331-2009. Petitioner filed an amended *pro se* petition for PCRA relief in January 2013. *Id.* Appointed PCRA counsel filed a second amended PCRA petition in July 2014. *Id.* at 14. The PCRA court gave notice of the court's intention to dismiss and the Petitioner filed a *pro se* response. *Id.* at 15. The response and petition were formally dismissed in June 2015. *Id.*

Thereafter, Petitioner's PCRA counsel filed a notice of appeal to the Pennsylvania Superior Court. *Id.* On appeal to the Superior Court, Petitioner raised the following claims:

(1) Did the PCRA Court err in failing to find trial counsel ineffective for failing to present two additional alibi witnesses?
(2) Did the PCRA Court err in failing to find trial counsel ineffective for failing to present the same witnesses during sentencing?

> (3) Did the PCRA Court err in failing to find trial counsel ineffective for failing to request DNA test of clothing found near the scene of the crime?

Exhibit F, Pet'r's Br. on PCRA Appeal, ECF No. 9 (beginning on page 120). The Superior Court affirmed the PCRA court's dismissal on June 20, 2017. *Commonwealth v. Hayes*, 174 A.3d 85 (Pa. Super. Ct. 2017). The Petitioner filed a petition for allowance of appeal, but the Supreme Court of Pennsylvania denied this request on December 19, 2017. *Commonwealth v. Hayes*, 644 Pa. 357 (2017).

Petitioner filed the instant *pro se* petition for a writ of habeas corpus and request for an evidentiary hearing on January 16, 2018. In this petition, Petitioner raised the following claims:

> (1) That trial counsel was ineffective for failing to present additional alibi witnesses.
> (2) That PCRA counsel was ineffective for failing to argue trial counsel's ineffectiveness for not properly raising on direct appeal the inconsistency of the verdict at trial.
> (3) That the trial court violated Petitioner's right under the Confrontation Clause of the Sixth Amendment.
> (4) That PCRA counsel was ineffective for failing to raise an argument that the trial court imposed an illegal sentence.
> (5) That trial counsel was ineffective for failing to request DNA testing on articles of clothing found near the crime scene.
> (6) That PCRA counsel was ineffective for failing to raise an argument that Petitioner's sentence violated the Fifth and Fourteenth Amendments.
> (7) That PCRA counsel was ineffective for railing to raise a claim that trial counsel was ineffective for failing to investigate and present additional eye witnesses.

Pet., ECF No. 1.

In her R&R, Judge Caracappa concluded that none of Petitioner's claims entitle him to relief and recommended that the petition be denied. R&R, ECF No. 11. Petitioner raises two

objections to Judge Caracappa's R&R. Obj., ECF No. 18. The Court considers those objections below.[1]

---

[1] Petitioner filed two motions subsequent to filing objections to Judge Caracappa's R&R. *See* ECF Nos. 19, 20. Both of these motions request the Court vacate Petitioner's sentence and order a new trial. One motion, ECF No. 19, relates to a letter introduced at trial and is discussed below. *See infra* footnote 6. The other relates to one of the detectives who investigated Petitioner's case, Philip Nordo.

In February 2019, Nordo was arrested and charged with dozens of sexual assault offenses. *See* Meagan Flynn, *He was known as a 'prolific' homicide detective. Now prosecutors say he sexually assaulted witnesses and suspects*, **Wash. Post** (Feb. 20, 2019), https://www.washingtonpost.com/nation/2019/02/20/he-was-known-prolific-homicide-detective-now-prosecutors-say-he-sexually-assaulted-witnesses-suspects/. Petitioner contends that he is entitled to a new trial based upon the evidence regarding the alleged misconduct by Nordo in other cases and Nordo's involvement in Petitioner's case. Petitioner argues that Nordo's involvement in this case raises questions about the validity of certain evidence. *See* Mot. 2-3, ECF No. 20. Besides establishing that Nordo was arrested and charged for allegedly improperly influencing investigations, Petitioner does not link Nordo's alleged misconduct with his case.

In his motion, Petitioner generally alleges that Nordo had influence over all evidence and witnesses involved in his case. Petitioner identifies several inconsistencies between witness statements and implies that these inconsistencies are the result of Nordo's misconduct. Petitioner also baldly asserts that Nordo "tampered [with] evidence and coerced witnesses to identify Petitioner and his codefendant." Mot. 3.

Petitioner's argument as to the validity of the evidence in the case lacks factual support. Indeed, Petitioner only makes unsubstantiated allegations that Nordo's involvement indicates that misconduct occurred. However, Nordo did not testify during Petitioner's trial and there is no indication that the allegations against Nordo relate to Petitioner's case specifically. Petitioner only points to minor inconsistencies in statements given to police, but these inconsistencies are not evidence of misconduct. In cases where a corrupt police officer or detective testified or was otherwise involved in the case, courts have denied habeas petitions and new trials where ample evidence of the defendant's guilt existed without the corrupt police officer's or detective's testimony, or where the allegations against the corrupt police officer or detective were collateral to the issues in the case. *See Santos v. Ebbert*, No. 11-cv-2270, 2012 U.S. Dist. LEXIS 65949, at *18 (M.D. Pa. May 10, 2012) (denying a habeas petition in part because evidence to impeach a prosecution witness based on that witness's corruption did not directly contradict the government's case and would not establish the petitioner's actual innocence); *Harris v. United States*, 999 F. Supp. 578, 581 (S.D.N.Y. 1998) (denying a habeas petition to vacate a conviction on the basis of newly discovered information regarding a corrupt officer's misconduct), *quoting United States v. Spencer*, 4 F.3d 115, 119 (2d Cir. 1993) ("The discovery of new evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial."); *Cabrera v. United States*, Nos. 94-cv-114, 90-cr-114, 1995 U.S. Dist. LEXIS 11547 (S.D.N.Y. Aug. 11, 1995) (denying a habeas petition where a corrupt officer's testimony was not essential to conviction). Moreover, Petitioner's "bald

## III. LEGAL STANDARD

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016). The "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

## IV. ANALYSIS

The Court adopts the R&R issued by Judge Caracappa and writes separately to address Petitioner's objections.[2] Petitioner raises two objections: (1) that Judge Caracappa erred by

---

assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition." *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (internal citation and quotation marks omitted). *See also Simms v. Carroll*, 432 F. Supp. 2d 443, 444 (D. Del. 2006) ("Bald assertions and conclusory allegations' do not provide a court with sufficient information to permit a proper assessment of habeas claims, and a habeas court cannot speculate about claims." (quoting 28 U.S.C. § 2254 Rule 2)). Therefore, the Court will deny Petitioner's motion to vacate his sentence and order a new trial.

[2] The Court notes some minor inconsistencies in Judge Caracappa's R&R. First, the R&R specifies that Petitioner filed his *pro se* petition for post-conviction relief on July 21, 2012. R&R 4, ECF No. 11. However, the Court of Common Pleas of Philadelphia County criminal docket indicates that the petition was filed on July 24, 2012. *See* State Court Docket; Court of Common Pleas of Philadelphia County 13, CP-51-CR-0006331-2009. Additionally, the petition for post-conviction relief in the state court record was stamped received on July 24, 2012. Second, the R&R states that Petitioner moved for new counsel on September 21, 2015, R&R 5, yet the criminal docket indicates that this motion was filed on September 24, 2015. *See* State Court Docket; Court of Common Pleas of Philadelphia County 16, CP-51-CR-0006331-2009. These inconsistencies are immaterial because timing is not at issue in this case.

Also, Judge Caracappa, quoting the transcript, writes that Petitioner struck the victim with a gun. *See e.g.*, R&R 38 ("Here, complainant testified that petitioner first pistol whipped complainant to the ground."). This is inaccurate. The transcript records indicate the victim

finding that his trial counsel was not ineffective for failing to request DNA testing on articles of clothing found near the crime scene; [3] and (2) that Judge Caracappa erred by finding that the trial court judge, the Honorable Sandy L.V. Byrd, did not violate Petitioner's Sixth Amendment rights when he allowed a letter to be introduced into evidence. For the following reasons, the Court overrules these objections.

**A. Petitioner's trial counsel was not ineffective for failing to request DNA testing.**

Petitioner first objects to Judge Caracappa's analysis of his trial counsel's effectiveness. Petitioner argues that had DNA testing been conducted, the DNA on the clothing would not have matched Petitioner's DNA and would have helped prove his innocence. Obj. 1. In essence, Petitioner argues that the DNA evidence would have supported his defense strategy to argue that he was not present at the time of the offense. Obj. 3, 8.

On the subject of DNA testing, Judge Caracappa explained in the R&R that DNA testing would not have established Petitioner's innocence in light of the other evidence and testimony against him. R&R 22. Judge Caracappa noted that the testimony at trial established that there were three assailants. *Id*. She concluded that even if the DNA testing had demonstrated that Petitioner's DNA was not on the clothing, this alone would not prove that Petitioner was not at

---

testified that coconspirator Craig Woodard hit the victim. *See* Trial Tr. Vol. 1, 63 (June 8, 2010). ("They all ran up. He hit—Craig hit me in the head with the gun. I fell."). Again, this inaccuracy is immaterial because Petitioner's objections do not relate to the specific acts which occurred on the night of the assault.

[3] In his objection to Judge Caracappa's DNA testing analysis, Petitioner asserts that the DNA evidence, coupled with alibi witnesses, would have helped to prove his innocence. *See* Obj. 2. Petitioner does not specifically object to Judge Caracappa's analysis as it relates to trial counsel's failure to call alibi witnesses and therefore Judge Caracappa's analysis on this point need not be addressed. Still, this Court notes that Judge Caracappa's analysis was correct.

the scene of the crime. *Id*. Therefore, Judge Caracappa concluded Petitioner could not establish prejudice under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.*

In *Strickland*, the United States Supreme Court established a two-step analysis for claims of ineffectiveness of counsel. 466 U.S. at 687. A petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Id*. To prove deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id*. (internal quotations omitted). In analyzing a counsel's alleged ineffective assistance, the reviewing court determines whether the acts or omissions that were allegedly not the result of reasoned professional judgment were outside the "wide range" of professional competent assistance. *Id.* at 690. The court's review must strongly presume that counsel's conduct was reasonable professional assistance. *Id.* at 689. To prove prejudice, a petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Petitioner must satisfy both prongs. *See id*. ("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."). Petitioner's claim for ineffective assistance for his trial counsel's decision not to request DNA testing on certain items of clothing allegedly recovered from the crime scene fails at each step of the *Strickland* analysis.

First, as to trial counsel's performance, the decision not to request DNA testing was not in error. Courts have recognized the dilemma defense counsel faces when considering requesting DNA testing of unknown samples. *See Bragg v. Rozum*, No. 3:10-cv-1287, 2010 U.S. Dist. LEXIS 142417, at *35 (M.D. Pa. Dec. 10, 2010) (citing *Grisby v. Blodgett*, 130 F.3d 365, 372-73 (9th Cir. 1997)); *Commonwealth v. Williams*, 587 Pa. 304, 312 (2006) ("It is easy to say that

7
081319

failing to pursue exculpatory evidence is ineffectiveness, but this presumes the evidence will indeed be exculpatory."). Petitioner argues that any competent counsel with an alibi defense would have tested the clothing for DNA evidence. Obj. 8. This is not necessarily true. The testimony at trial did not clearly indicate to whom the clothing belonged; only that it was found with two guns involved in the crime. *See* Trial Tr. Vol. 1, 82-83; 139-43 (June 8, 2010). Had trial counsel requested DNA testing, he or she would have undertaken the substantial risk that the test results would come back unfavorably to Petitioner and place him at the scene of the crime. *See Bragg v. Rozum*, 2010 U.S. Dist. LEXIS 142417, at *35; *Commonwealth v. Williams*, 587 Pa. at 312. Additionally, Petitioner was never accused of possessing either of the guns. Rather, the guns belonged to Petitioner's two coconspirators. It would be reasonable that the clothing also belonged to one or both of the coconspirators. For these reasons, trial counsel's conduct regarding the decision not to request DNA testing on certain items of clothing allegedly recovered from the crime scene was objectively reasonable and not in error. This conclusion is reinforced when considering the strong presumption that counsel's conduct was reasonable professional assistance. *Strickland*, 466 U.S. at 689.[4]

Second, as to prejudice, Petitioner has not shown that trial counsel's decision not to conduct DNA testing deprived Petitioner of a fair trial. Even if the Court assumes that DNA analysis would establish that Petitioner's DNA was not found on the clothing, Petitioner has not shown that there is a reasonable probability that the jury may have acquitted him had his trial counsel presented such evidence at trial. Although this evidence arguably would have supported

---

[4] Moreover, even if the Court were to assume for the sake of Petitioner's argument that the decision not to request DNA testing was not the result of reasoned professional judgment, such a decision is not so unreasonable as to fall outside the "wide range" of professional competent assistance. *Strickland*, 466 U.S. at 689.

Petitioner's alibi defense that he was not present at the time of the crime, it would not exclude Petitioner's presence at the crime scene considering the testimony at trial that there were three assailants and that he was one of them.

Accordingly, this objection is overruled. Petitioner's claim for ineffective assistance for his trial counsel's decision not to request DNA testing on certain items of clothing fails.

**B. Petitioner's Confrontation Clause rights were not violated by introduction of a letter at trial.**

Petitioner next argues that Judge Caracappa erred because she did not find that the trial court violated Petitioner's Sixth Amendment rights when the trial court allowed the Commonwealth to introduce a letter written by Kulb's stepfather, William Putt, to Kulb's grandmother into evidence. Obj. 9.[5]

In the R&R, Judge Caracappa correctly notes that the Confrontation Clause protects only against testimonial hearsay statements. R&R 40. Judge Caracappa noted that the letter was not written to law enforcement and was less likely to be considered testimonial. R&R 42. Further, Judge Caracappa indicated that the letter appeared to be a private letter between family members; not a statement made with the intent to assist in a prosecution. *Id*. Because the letter was non-testimonial, the decision of whether to allow it into evidence at trial was based upon Pennsylvania's Rule of Evidence and the state courts' application of those rules could not be reviewed by Judge Caracappa. R&R 43.

---

[5] The Court notes a general discrepancy regarding the recipient of the letter. Petitioner identifies this letter as being sent by Kulb's stepfather (William Putt) to Kulb's grandmother. Pet. 15, ECF No. 1. The Trial Transcript, however, includes testimony from Kulb that his stepfather sent the letter to his mother. See Trial Tr. Vol. 1, 90-91. However, because this issue is not determinative to this Court's analysis, the discrepancy is inconsequential.

The Sixth Amendment's Confrontation Clause states that an accused shall have the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Supreme Court has determined that the core of the Confrontation Clause is concerned with "testimonial" hearsay. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004). Where testimonial hearsay is involved, the Confrontation Clause requires that the witness be unavailable to testify, and that the defendant have a prior opportunity for cross-examination. *United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012) (quoting *Crawford*, 541 U.S. at 59, 68). If the statement is deemed to be nontestimonial, then admissibility is established solely by the other rules of evidence. *See id*. at 127.

The Supreme Court in *Crawford* noted three types of testimonial statements typically considered part of the core class protected by the Confrontation Clause: (1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," *Crawford*, 541 U.S. at 51 (citations omitted); (2) "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *id.* at 51-52 (quoting *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment)); and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *id.* at 52 (citations omitted). Further cases have held that the formality of the setting in which the statement was given can suggest whether the statement was testimonial. *See Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015) (explaining that statements made to individuals who are not law enforcement officers "are much less likely to be testimonial than statements to law

enforcement officers."). "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to create an out-of-court substitute for trial testimony." *Clark*, 135 S. Ct. at 2180 (internal quotations omitted). Adhering to the precedent on testimonial statements, the Third Circuit Court of Appeals has defined a testimonial statement as one made during non-emergency circumstances and which the declarant would objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005).

Petitioner contends that the Commonwealth stated that its case was dependent on Kulb's credibility. Obj. at 10 (citing Trial Tr. Vol. 1, 52). Petitioner asserts that the Commonwealth introduced the letter allegedly written by Kulb's stepfather to Kulb's grandmother, which concerns threats made by an unidentified person against Kulb's family if Kulb testified at trial, to lend credibility to Kulb's inconsistent testimony given during other hearings. *See id*. Petitioner also urges this Court to examine the alleged misapplication of Pennsylvania evidentiary rules. *See id.* at 11. This objection is confused and fails.

Kulb's stepfather wrote the letter to Kulb's grandmother and generally informed her that Kulb's family was in danger if he testified. Trial Tr. Vol. 1, 92. This type of statement is not one of the testimonial statements typically considered part of the core class protected by the Confrontation Clause. *See, e.g.*, *Clark*, 135 S. Ct. at 2181; *Crawford*, 541 U.S. at 51-52; *Hinton*, 423 F.3d at 360. It is clear that Kulb's stepfather sent the letter primarily with the purpose of warning Kulb and his family of his belief of their impending danger. The declarant (Kulb's stepfather) could not objectively foresee that the letter would be used in the investigation or prosecution of Petitioner. *See Hinton*, 423 F.3d at 360. The letter is not a formalized testimonial item such as an affidavit or deposition. It is entirely informal—written by hand and sent from

one party to another. *See Clark*, 135 S. Ct. at 2180. In light of all the circumstances of the letter, viewed objectively, the Court cannot conclude that the primary purpose of Kulb's stepfather in writing the letter was to create an out-of-court substitute for trial testimony.

As the Confrontation Clause focuses solely on testimonial hearsay, once evidence is determined to be non-testimonial, the trial court is required only to determine whether the statement was admitted properly under the appropriate rules of evidence. *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012). That is what the trial court did in Petitioner's case and allowed it to be admitted. Now, Petitioner urges this Court to review the trial court's application of Pennsylvania evidentiary rules. However, a claim that a state court misapplied its own evidentiary rules is a non-cognizable federal habeas corpus claim. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, the Court will not consider Petitioner's argument on this point.

Because the Court determines the letter to be non-testimonial, Petitioner's claim that his rights under the Confrontation Clause were violated at trial fails. His objection is overruled.[6]

---

[6] After filing objections to the R&R, Petitioner filed a motion requesting a new trial based on newly discovered information he alleges to show that the prosecutor deliberately misrepresented and falsified evidence. See Mot. 2-3, ECF No. 19. Specifically, Petitioner argues that the prosecutor falsified the correct spelling of Kulb's stepfather's surname, Putt. Although the information Petitioner alleges to be newly discovered was available to Petitioner and his counsel at his criminal trial and, therefore, this motion is untimely, the Court still considered the merits of Petitioner's motion and argument in its review of the petition. In the end, this argument is without support from the factual record and the motion is denied.

The trial transcript reflects some confusion as to Putt's surname, but not that the prosecutor deliberately misrepresented the spelling of the surname. When the prosecutor introduced the letter, he asked Kulb his stepfather's name. Kulb replied "William Putt." At this point, the prosecutor spelled the last name he heard, "P-U-T-T." Kulb confirmed this spelling. Trial Tr. Vol. 1, 90. A few moments later, the prosecutor is quoted as asking Kulb his reaction to receiving the letter from "Mr. Pudd, P-U-D-D." Trial Tr. Vol. 1, 92. There is no explanation as to this discrepancy, but the Petitioner's interpretation—that the prosecutor deliberately misrepresented and falsified the spelling—is without merit.

Petitioner further argues that this alleged misrepresentation prevented him from a proper investigation of the circumstances surrounding the letter. Based on his search of the

## V. CONCLUSION

After applying de novo review, this Court concludes that Judge Caracappa correctly determined that the petition for writ of habeas corpus is meritless and that the claims are procedurally defaulted. This Court therefore adopts the recommendation to dismiss and deny the petition. "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* For the reasons set forth herein, the Court

---

Pennsylvania Department of Corrections records, Petitioner argues that Putt was at a different prison than the prosecutor alleged and therefore would not have heard the threats made against Kulb's family if Kulb were to testify, as the prosecutor alleged. To support this argument, Petitioner attaches a document from the Department of Corrections purporting to show that William Putt was not at the prison the prosecutor alleged. This argument also fails.

Petitioner states in his motion that he was made aware of the prosecutor's allegedly false spelling of the surname in November 2018. This does not add up. The trial transcript reveals that Petitioner's defense counsel was given the opportunity to review the letter. Trial Tr. Vol. 1, 16. Then, during trial, the letter was read into the record. Trial Tr. Vol. 1, 17-18. After extensive discussion of its relevancy, the trial court admitted the letter into evidence as a court exhibit. Trial Tr. Vol. 1, 42-60. After the letter was admitted, Petitioner's defense counsel was given the opportunity to cross-examine Kulb on the spelling. Trial Tr. Vol. 1, 112-17. It is clear that Petitioner was, or should have been, aware of the spelling confusion as to Putt's surname and could have included the issue in his petition for a writ of habeas corpus. He did not.

Moreover, notwithstanding the fact that Petitioner could have searched the correct spelling back in 2010 when the prosecutor spelled Putt's surname with two Ts, see Trial Tr. Vol. 1, 90, Petitioner's argument presumes that the William Putt his document presents is the correct William Putt. This is not a proper basis for the court to vacate Petitioner's sentence and remand for a new trial. Therefore, the Court will deny this motion.

finds that reasonable jurists would not debate the Court's determinations. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge